**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                                     :
                                                           :     Chapter 11
RESIDENTIAL CAPITAL, LLC, *et al.*,                        :     Case No. 12-12020 (MG)
                                                           :     Jointly Administered
                              Debtor.                      :
-------------------------------------------------------------x
RESCAP LIQUIDATING TRUST                                   :
                                                           :
                              Plaintiff,                   :
                                                           :
              - against -                                  :     Adv. Proc. No. 14-01999(MG)
                                                           :
PRIMARY CAPITAL ADVISORS, LLC,                             :
                                                           :
                              Defendant.                   :
-------------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRIMARY CAPITAL ADVISORS, LC's MOTION TO WITHDRAW THE REFERENCE AND TO <u>CHANGE VENUE TO THE DISTRICT OF MINNESOTA</u>

**PRYOR CASHMAN LLP**               **BURR & FORMAN LLP**
Richard Levy, Jr.                   John O'Shea Sullivan (*pro hac vice*)
7 Time Square                       171 Seventeenth Street, N.W., Suite 1100
New York, New York 10036            Atlanta, Georgia 30363
Telephone:    (212) 326-0886        Telephone:  (404) 815-3000
Facsimile:    (212) 326-0806        Facsimile:  (404) 817-3244
rlevy@pryorcashman.com              ssulivan@burr.com


*Attorneys for Defendant Synovus Mortgage Corp.*

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................ 4

  A.   Plaintiff.......................................................................................................... 4

  B.   The Bankruptcy Proceedings. .......................................................................... 4

  C.   RFC Files Numerous Similar Lawsuits in State and Federal Courts. ............................ 5

III.  ARGUMENT ...................................................................................................... 7

  A.   THE REFERENCE TO THE BANKRUPTCY COURT SHOULD BE WITHDRAWN7

    1.   The Reference Must Be Withdrawn Because the Amended Standing Order Does Not
Automatically Apply to this Case. ....................................................................... 7

    2.   The Reference Should Be Withdrawn "For Cause." ................................................ 12

  B.   THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
       MINNESOTA .................................................................................................. 19

    1.   Forum Selection Clauses in the Parties' Agreements Require This Action to be
Transferred to the District of Minnesota................................................................ 20

    2.   RFC Has Waived the Right To Argue That the Bankruptcy Court is More Convenient
Than the District of Minnesota. .......................................................................... 22

    3.   The Relevant Factors Favor Transfer. ................................................................. 22

IV.   CONCLUSION ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Atlantic Marine Constr. Co., Inc. v. U.S. District Ct. for Western Dist. of Tex.*,
   134 S. Ct., 568 (2013) ............................................................................... *passim*

*Cantor v. Am. Banknote Corp.*,
   2007 WL 3084966 (S.D.N.Y. Oct. 22, 2007) ................................................ 7

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
   462 B.R. 457 (S.D.N.Y. 2011) ......................................................... 13, 15, 16

*Executive Benefits Ins. Agency v. Arkison*,
   134 S. Ct. 2165 (2014) ............................................................................... 11

*Falise v. American Tobacco Co.*,
   241 B.R. 48 (E.D.N.Y. 1999) ...................................................................... 8

*GMAC/Residential Funding Corp. v. Infinity Mortgage, Inc.*,
   2003 WL 21406189 (D. Minn. June 13, 2003) .......................................... 22

*Granfinanciera S.A. v. Nordberg*,
   492 U.S. 33 (1989) ..................................................................................... 16

*Guccione v. Bell*,
   2006 WL 2032641 (S.D.N.Y. July 20, 2006) .............................................. 7

*Gulf States Exploration Co. v. Manville Forest Prod. Corp.*,
   896 F.2d 1384 (2d Cir. 1990) ..................................................................... 19

*In re A.H. Robbins Co.*,
   86 F.3d. 364 (4th Cir. 1996) ........................................................................ 8

*In re Appalachian Fuels, LLC*,
   472 B.R. 731 (E.D. Ky. 2012) .................................................................... 13

*In re Cavalry Construction*,
   2013 WL 5682741 (Bankr. S.D.N.Y. Oct. 18, 2013) ................................. 15

*In re Durso Supermarkets, Inc.*,
   170 B.R. 211 (S.D.N.Y. 1994) ................................................................... 17

*In re EMS Fin. Servs., LLC*,
   491 B.R. 196 (E.D.N.Y. 2013) ................................................................... 16

*In re Erickson*,
   2012 WL 1999493 (D. Md. June 1, 2012) ................................................. 13

*In re Fairfield Sentry Ltd. Litig.,*
    458 B.R. 665 (S.D.N.Y. 2011) .............................................................. 13

*In re General Media, Inc.,*
    335 B.R. 66 (S.D.N.Y. 2005).............................................. 7, 8, 9, 10

*In re Haws,*
    158 B.R. 965 (Bankr. S.D. Tex. 1993) ................................................ 9

*In re Houbigant, Inc.,*
    185 B.R. 680 (S.D.N.Y. 1995)........................................................... 19

*In re Ionosphere Clubs, Inc.,*
    1990 WL 5203 (S.D.N.Y. Jan. 24 1990) .......................................... 18

*In re Joseph DelGreco & Co.,*
    2011 WL 350281 (S.D.N.Y. Jan. 26, 2011). ............................... 13, 18

*In re Meyers,*
    2013 WL 6080270 (Bankr. N.D. Ohio Nov. 18, 2013) ..................... 15

*In re Morrison,*
    409 B.R. 384, 391 (S.D. Tex. 2009) ................................................. 14

*In re Orion Pictures Corp.,*
    4 F.3d 1095, 1101 (2d Cir. 1993).............................................. 12, 13

*In re Park Avenue Radiologists, P.C.,*
    450 B.R. 461 (Bankr. S.D.N.Y. 2011) ......................................... 7, 16

*In re Resorts Int'l, Inc.,*
    199 B.R. 113 (Bankr. D. N.J. 1996) ........................................... 8, 10

*In re Solomon's One, LLC,*
    2014 WL 846084 (Bankr. D. Md. Mar. 4, 2014)............................... 15

*In re Worldcom, Inc.,*
    2008 WL 2441062 (S.D.N.Y. June 18, 2008) .................................. 17

*Liberty Mut. Ins. Co. v. Fairbanks Co.,*
    2014 WL 1796005 (S.D.N.Y. May 5, 2014) ..................................... 23

*LightSquared Inc. v. Deere & Co.,*
    2014 WL 345270 (S.D.N.Y. Jan. 31, 2014) ..................................... 17

*M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.,*
    2008 WL 2596322 (S.D.N.Y. June 26, 2008) .................................. 18

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013)..................................................................................... 20

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014)..................................................................................... 21

*Montana v. Goldin* (In re *Pegasus Gold Corp.)*,
  394 F.3d (9th Cir. 2005) ........................................................................................... 9

*New York Skyline, Inc. v. Empire State Bldg. Trust Co. L.L.C. (In re New York Skyline, Inc.)*,
  2014 U.S. Dist. LEXIS 82477 (S.D.N.Y. June 16, 2014)....................................... 11

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50, 102 S. Ct. 2858, L.Ed.2d 598 (1982). ............................................... 14

*Residential Funding Co. LLC v. First California Mortgage Co.*,
  Civil Action No. 0:13-cv-03453-SRN-JJK, filed Dec. 13, 2013 (D. Minn.)........................ 5

*Residential Funding Co., LLC v. Ark-La-Tex Financial Services, LLC*,
  Civil Action No. 0:13-cv-03448-DWF-TNL, filed Dec. 12, 2013 (D. Minn.)........................ 5

*Residential Funding Co., LLC v. Bell State Bank & Trust*,
  Civil Action No. 0:13-cv-03454-DSD-JJG, filed Dec. 13, 2013 (D. Minn.)........................ 5

*Residential Funding Co., LLC v. Benchmark Funding, Inc.*,
  Civil Action No. 0:13-cv-03452-RHK-FLN, filed Dec. 13, 2013 (D. Minn).......................... 5

*Residential Funding Co., LLC v. Cherry Creek Mortg. Co., Inc.*,
  2014 WL 1686516, at *4-5 (D. Minn. Apr. 29, 2014).................................................... 6

*Residential Funding Co., LLC v. Circle Mortgage Corp.*,
  Civil Action No. 0:13-cv-03545-PAM-JJK, filed Dec. 16, 2013 (D. Minn.)........................ 5

*Residential Funding Co., LLC v. Countrywide Home Loans, Inc.*,
  Case No. 27-cv-14-2783, filed Feb. 26, 2014 (D. Minn)............................................... 5

*Residential Funding Co., LLC v. E Trade Bank*, Civil Action No.
  0:13-cv-03496-JNE-TNL, filed Dec. 13, 2013 (D. Minn.)............................................ 5

*Residential Funding Co., LLC v. First Equity Mortgage Bankers, Inc.*,
  Civil Action No. 0:13-cv-03473-ADM-TNL, filed Dec. 13, 2013 (D. Minn.) ...................... 5

*Residential Funding Co., LLC v. Gateway Bank, F.S.B.*,
   Civil Action No. 0:13-cv-03518-MJD-JSM, filed Dec. 15, 2013 (D. Minn.) ...................... 5

*Residential Funding Co., LLC v. Golden Empire Mortgage, Inc.*,
  Civil Action No. 0:13-cv-03466-PJS-JJK, filed Dec. 13, 2013 (D. Minn.)........................ 5

iv

*Residential Funding Co., LLC v. Lenox Financial Mortgage Corp.*,
    Civil Action No. 0:13-cv-03495-ADM-FLN, filed Dec. 13, 2013 (D. Minn.).........................6

*Residential Funding Co., LLC v. Mortgage Capital Associates, Inc*.,
    Civil Action No. 0:13-cv-03492-JNE-FLN, filed Dec. 16, 2013 (D. Minn.) ..........................6

*Residential Funding Co., LLC v. Pemm. Tek Mortgage Services, LLC*.,
    Civil Action No. 0:13-cv-03502-DSD-FLN, filed Dec. 14, 2013 (D. Minn.) ..........................6

*Residential Funding Co., LLC v. PNC Bank*,
    Civil Action No. Civil Action No.13 Civ. 3498 (JRT) (D. Minn.)..........................................21

*Residential Funding Co., LLC v. Sierra Pacific Mortgage Co., Inc*.,
    Civil Action No. 0:13-cv-03511-RHK-FLN, filed Dec. 14, 2013 (D. Minn.).........................6

*Residential Funding Co., LLC v. The Mortgage Outlet, Inc*.,
    Civil Action No. 0:13-cv-03447-PJS-JSM, filed Dec. 12, 2013 (D. Minn.) ..........................6

*Residential Funding Co., LLC v. Ulster Savings Bank*,
    Civil Action No. 0:13-cv-03530-PJS-FLN, filed Dec. 15, 2013 (D. Minn.) ..........................6

*RFC v. Eagle Nat'l Bank*,
    Civil Action No. 0:13-cv-448, filed Feb. 25, 2013 (D. Minn.) 2013) .......................................5

*RFC v. MortgageIT, Inc.*,
    Civil Action No. 0:13-cv-189, filed Jan. 23, 2013 (D. Minn.) ..................................................5

*RFC v. The Money Source Inc.*,
    Civil Action No. 0:13-cv-317, filed Feb. 7, 2013 (D. Minn.)...................................................5

*Solutia Inc. v. FMC Corp*.,
    2004 WL 1661115 (S.D.N.Y. July 27, 20014) ................................................................ 12, 17

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ................................................................ 11, 12, 13, 14

*Synegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*,
    905 F. Supp. 2d 526 (S.D.N.Y. 2012)...........................................................................13

**Statutes**

28 U.S.C. §157..................................................................................................................*passim*

28 U.S.C. §158........................................................................................................................*1*

28 U.S.C. § 1332................................................................................................................. 3, 7

28 U.S.C. § 1334 ................................................................................................ *passim*

28 U.S.C. § 1404 ....................................................................................................... 1, 3

28 U.S.C. § 1452 ....................................................................................................... 1, 3

## Other Authorities

8 COLLIER ON BANKRUPTCY ¶ 1142.04[1]
  (A. Resnick & H. Sommer, eds. 16th ed. 2014) ................................................... 11

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO WITHDRAW THE REFERENCE AND TO**
**TRANSFER VENUE TO THE DISTRICT OF MINNESOTA**

Defendant Primary Capital Advisors, LC, n/k/a Primary Capital Mortgage, LLC ("PCA")[1] respectfully submits this Memorandum of Law in support of its Motion for an order (1) pursuant to 28 U.S.C. § 158(d), Federal Rule of Bankruptcy Procedure 5011, and Local Bankruptcy Rule 5011-1, withdrawing from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the reference of the above-captioned adversary proceeding, and (2) pursuant to 28 U.S.C. § 1404(a) and/or § 1452, transferring venue to the United States District Court for the District of Minnesota (the "District of Minnesota").

## I.   PRELIMINARY STATEMENT

This is a state law breach of contract and indemnification action filed by Plaintiff ResCap Liquidating Trust ("Liquidating Trust" or "Plaintiff"), purportedly as successor to Residential Funding Company, LLC f/k/a Residential Funding Corporation ("RFC"), against PCA, a non-debtor party that did not otherwise file a claim or participate in any way in the Chapter 11 reorganization case for RFC in the Bankruptcy Court.  The Complaint alleges that PCA sold defective residential mortgage loans to RFC.  PCA denies the allegations.

This lawsuit is just one of dozens of similar breach of contract and indemnification lawsuits filed by RFC or Plaintiff against so-called "correspondent lenders" (such as PCA) from which it had acquired mortgage loans many years ago.  These lawsuits were mostly filed outside of the Bankruptcy Court, primarily in Minnesota state and federal courts, demonstrating Plaintiff's agreement that Bankruptcy Court is not the appropriate venue for these claims. Minnesota is where RFC was located and where the parties chose to litigate against PCA in their

---

[1] PCA is incorrectly referred to in the above-styled caption as Primary Capital Advisors, LLC.

contract. Although Plaintiff or RFC chose to file many dozens of lawsuits elsewhere, Plaintiff has recently attempted to move other lawsuits alleging sales of defective residential mortgage loans from state or federal district court to the Bankruptcy Court. It is clear that at some point that notwithstanding the parties' choice of venue agreement, Plaintiff determined that it would gain some strategic advantage by proceeding with these actions in the Bankruptcy Court. Such forum shopping cannot be permitted or rewarded, as Plaintiff's claims are completely unrelated to bankruptcy law and the Bankruptcy Court therefore lacks jurisdiction to hear them.[2]

Reference to the Bankruptcy Court must be withdrawn because the Bankruptcy Court lacks jurisdiction over this case, a "non-core" proceeding that does not "arise in" or "arise under" title 11, nor is "related to a case under title 11." The claims asserted herein are pure state law causes of action that bear no relation to bankruptcy law whatsoever. Moreover, it is well-settled that bankruptcy jurisdiction shrinks after a plan is confirmed, and the test for post-confirmation bankruptcy jurisdiction is not whether the claim has a "conceivable impact" on the bankruptcy case, but whether it has a "close nexus" to the bankruptcy plan or proceedings, a far more stringent test. A "close nexus" is typically found only in instances where resolution of the dispute requires construction or interpretation of the plan itself, not in situations where, as here, the only conceivable link between the claim and the bankruptcy is the potential for additional recovery by creditors in the event Plaintiff is successful in prosecuting its claims against PCA.

Even if the Bankruptcy Court had "related to" jurisdiction, the reference should nonetheless be withdrawn under 28 U.S.C. §157(d) because, among other reasons, (1) the matter is non-core, as it does not arise under Title 11 or arise in a Title 11 proceeding and can exist

---

[2] Just as the Bankruptcy Court lacks jurisdiction over this matter, the courts of New York would lack personal jurisdiction over PCA. PCA lacks the minimum constitutionally-required contacts with New York to be subject to personal jurisdiction in the state. PCA appears by special appearance, objects to personal jurisdiction, and reserves all defenses based on the lack of personal jurisdiction.

outside of bankruptcy; (2) under United States Supreme Court precedent, the bankruptcy court lacks the constitutional authority to issue final, binding orders on Plaintiff's state law claims; (3) PCA does not consent to final adjudication by the bankruptcy court and reserves its right to a trial by jury; (4) proceeding with this matter in bankruptcy court would waste judicial resources because the bankruptcy court may only propose findings of fact and conclusions of law that would then have to be reviewed by the district court *de novo;* and (5) permitting Plaintiff to proceed in the bankruptcy court would reward its forum shopping and encourage forum shopping by others.  Because the Bankruptcy Court lacks jurisdiction over this matter, and because cause exists under §157(d) to withdraw the reference, the reference of this case to the Bankruptcy Court should be withdrawn.

Additionally, upon withdrawal of the reference, the Court should transfer venue to the District of Minnesota, the appropriate and agreed-to forum to resolve this lawsuit.  The contracts between RFC and PCA include a forum selection clause mandating that *any* litigation involving those contracts be prosecuted in Minnesota courts.  No exceptional circumstances exist here for disregarding the parties' forum selection clause.  While RFC waived the right to argue that the Bankruptcy Court is a more convenient forum than the District of Minnesota, in fact, all of the "convenience" factors — location of witnesses, location of the parties, applicability of Minnesota law, which governs the contracts — support litigation and trial of the case in Minnesota, the venue selected by the parties by way of the fully enforceable forum selection clause.[3]

---

[3] If there is no bankruptcy jurisdiction under 28 U.S.C. § 1334, the District Court may change venue under 28 U.S.C. § 1404(a).  On its face, the Complaint expressly alleges diversity of citizenship jurisdiction under 28 U.S.C. § 1332.  (*See* Declaration of John O'Shea Sullivan ("Sullivan Decl."), Exh. A, Compl., ¶ 15.).  If there is bankruptcy jurisdiction, venue may be changed under 28 U.S.C. § 1452.  The language of Sections 1404(a) and 1452 is substantially identical.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Plaintiff.

Plaintiff, the ResCap Liquidating Trust, is a Delaware statutory trust and alleges that it is the successor to RFC.  Plaintiff states that RFC is "in the business of acquiring and securitizing residential mortgage loans" and that its business model "was built on acquiring loans from 'correspondent lenders,' such as Defendant [PCA], and distributing those loans by either pooling them together with other similar mortgage loans to sell into residential mortgage-backed securitization ("RMBS") trusts, or selling them to whole loan purchasers."  (Sullivan Decl., Exh. A, Compl., ¶¶ 2, 3).  Plaintiff alleges that "over the course of the parties' relationship, [PCA] sold over 800 mortgage loans, with an original principal balance in excess of $55 million, to RFC."  (*Id.*, ¶ 4.)

### B.   The Bankruptcy Proceedings.

On May 14, 2012, various Residential Capital entities (including RFC) filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code filed in the Bankruptcy Court (the "Bankruptcy Proceedings").   (Sullivan Decl., Exh. B, ¶ 1).   The Bankruptcy Proceedings were jointly administered under the caption *In re Residential Capital, LLC,* Case No. 12-12020 (MG) (Bankr. S.D.N.Y.).

The Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, *et al.* and the Official Committee of Unsecured Creditors (the "Chapter 11 Plan"), was confirmed by the Bankruptcy Court on December 11, 2013 and became effective on December 17, 2013. (Sullivan Decl., Exhs. C, D).   The Bankruptcy Court's confirmation order provides that "the Debtors will transfer and assign to the Liquidating Trust the Available Assets in accordance with Article VI.C of the Plan, which shall be deemed vested in the Liquidating Trust."   (Sullivan Decl., Exh. C, p. 43, ¶ 24).  The Chapter 11 Plan defines "Available Assets" to include "all of the

4

assets of the Estates," including "the Liquidating Trust Causes of Action."  (Sullivan Decl., Exh. D, p. 4, ¶ 27).  The Amended and Restated ResCap Liquidating Trust Agreement, dated December 17, 2013 (the "Liquidation Trust Agreement") provides that "the Liquidating Trust Board shall have power and authority to bring (or cause to be brought) ***any action in any court of competent jurisdiction*** to prosecute any Liquidating Trust Causes of Action."  (Sullivan Decl., Exh. E, p. 60) (emphasis added).

PCA did not participate in the Bankruptcy Proceedings, did not file a proof of claim in the Bankruptcy Proceedings, did not vote on the Chapter 11 Plan, and did not otherwise appear in the Bankruptcy Proceedings.  Neither the subject Contract nor the loans sold by PCA under the Contract were specifically addressed in the Bankruptcy Proceedings.

**C.     RFC Files Numerous Similar Lawsuits in State and Federal Courts.**

During the course of its Bankruptcy Proceedings, RFC filed various actions outside of the Bankruptcy Court in which it alleged common law claims for breach of contract and/or indemnification.[4]  Additionally, following confirmation of the Chapter 11 Plan in December 2013, Plaintiff filed more than 60 similar lawsuits against various "correspondent lenders," mostly in Minnesota state and federal court.[5]  Each of the complaints and amended complaints

---

[4] *See RFC v. MortgageIT, Inc.*, Civil Action No. 0:13-cv-189, filed Jan. 23, 2013 (D. Minn.); *RFC v. The Money Source Inc.*, Civil Action No. 0:13-cv-317, filed Feb. 7, 2013 (D. Minn.); *RFC v. Eagle Nat'l Bank*, Civil Action No. 0:13-cv-448, filed Feb. 25, 2013 (D. Minn.) 2013).

[5] *See, e.g., Residential Funding Co., LLC v. Ark-La-Tex Financial Services, LLC*, Civil Action No. 0:13-cv-03448-DWF-TNL, filed Dec. 12, 2013 (D. Minn.); *Residential Funding Co., LLC v. Bell State Bank & Trust*, Civil Action No. 0:13-cv-03454-DSD-JJG, filed Dec. 13, 2013 (D. Minn.); *Residential Funding Co., LLC v. Benchmark Funding, Inc.*, Civil Action No. 0:13-cv-03452-RHK-FLN, filed Dec. 13, 2013 (D. Minn); *Residential Funding Co., LLC v. Circle Mortgage Corp.*, Civil Action No. 0:13-cv-03545-PAM-JJK, filed Dec. 16, 2013 (D. Minn.); *Residential Funding Co., LLC v. Countrywide Home Loans, Inc.*, Case No. 27-cv-14-2783, filed Feb. 26, 2014 (D. Minn); *Residential Funding Co., LLC v. E Trade Bank*, Civil Action No. 0:13-cv-03496-JNE-TNL, filed Dec. 13, 2013 (D. Minn.); *Residential Funding Co. LLC v. First California Mortgage Co.*, Civil Action No. 0:13-cv-03453-SRN-JJK, filed Dec. 13, 2013 (D. Minn.); *Residential Funding Co., LLC v. First Equity Mortgage Bankers, Inc.*, Civil Action No. 0:13-cv-03473-ADM-TNL, filed Dec. 13, 2013 (D. Minn.); *Residential Funding Co., LLC v. Gateway Bank, F.S.B.*, Civil Action No. 0:13-cv-03518-MJD-JSM, filed Dec. 15, 2013 (D. Minn.); *Residential Funding Co., LLC v. Golden Empire Mortgage, Inc.*, Civil Action No. 0:13-cv-03466-PJS-JJK, filed Dec. 13, 2013 (D. Minn.);

filed in these multiple actions assert state common law claims for breach of contract and indemnification arising out of the respective defendants' alleged sale of mortgage loans to RFC.[6]

Plaintiff filed this lawsuit on May 13, 2014, alleging that jurisdiction is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1334, in that the matter arises under title 11 or arises in or is related to the Debtors' bankruptcy proceedings, and also that jurisdiction is proper pursuant to 28 U.S.C. § 1332 on diversity grounds.  (Sullivan Decl., Exh. A, Compl. ¶ 15, 16).  To the contrary, the state law claims asserted in this case over a contract are not related to, nor is there a close nexus, to the Bankruptcy Proceedings.  For the reasons discussed more fully below, the reference to the Bankruptcy Court should be withdrawn and this action should be transferred to the District of Minnesota.

---

*Residential Funding Co., LLC v. Lenox Financial Mortgage Corp.*, Civil Action No. 0:13-cv-03495-ADM-FLN, filed Dec. 13, 2013 (D. Minn.); *Residential Funding Co., LLC v. Mortgage Capital Associates, Inc.*, Civil Action No. 0:13-cv-03492-JNE-FLN, filed Dec. 16, 2013 (D. Minn.); *Residential Funding Co., LLC v. Pemm. Tek Mortgage Services, LLC.*, Civil Action No. 0:13-cv-03502-DSD-FLN, filed Dec. 14, 2013 (D. Minn.); *Residential Funding Co., LLC v. Sierra Pacific Mortgage Co., Inc.*, Civil Action No. 0:13-cv-03511-RHK-FLN, filed Dec. 14, 2013 (D. Minn.); *Residential Funding Co., LLC v. The Mortgage Outlet, Inc.*, Civil Action No. 0:13-cv-03447-PJS-JSM, filed Dec. 12, 2013 (D. Minn.); *Residential Funding Co., LLC v. Ulster Savings Bank*, Civil Action No. 0:13-cv-03530-PJS-FLN, filed Dec. 15, 2013 (D. Minn.).

[6] Many of the actions that were filed in Minnesota state courts were removed by RFC to the District of Minnesota. RFC thereafter sought to transfer venue from the District of Minnesota to the District Court for the Southern District of New York.  In at least thirteen decisions that have been rendered to date, Minnesota federal courts have uniformly denied RFC's motions to transfer venue to the Southern District of New York specifically finding that (i) the requested transfer was not in the public interest or interest of justice, (ii) RFC was bound by the forum selection clause in its seller contract with the defendant having "irrevocably" submitted to the jurisdiction of the Minnesota courts, and (iii) RFC has blown hot and cold with regard to whether the Bankruptcy Court had exclusive jurisdiction over the state law claims alleged in the action.  *Residential Funding Co., LLC v. Cherry Creek Mortg. Co., Inc.*, 2014 WL 1686516, at *4-5 (D. Minn. Apr. 29, 2014).  Following these denials for transfer out of Minnesota, RFC withdrew its motions to transfer venue and is proceeding with its actions in Minnesota where RFC chose to litigate.

### III.  ARGUMENT

**A.    THE REFERENCE TO THE BANKRUPTCY COURT SHOULD BE WITHDRAWN**

      **1.    The Reference Must Be Withdrawn Because the Amended Standing Order Does Not Automatically Apply to this Case.**

The Amended Standing Order entered by the United States District Court for the Southern District of New York only applies to cases in which the Bankruptcy Court possesses bankruptcy jurisdiction.  There is no bankruptcy jurisdiction here because this action is a non-core proceeding that neither "arises in" or "arises under" title 11, nor is it "related to a case under title 11."  28 U.S.C. §1334(b).  Accordingly, because the Bankruptcy Court lacks jurisdiction over this case, the automatic reference of this action the Bankruptcy Court must be withdrawn.

           **a.    Bankruptcy jurisdiction shrinks post-confirmation, and only matters with a "close nexus" to the bankruptcy plan or proceedings fall within the court's "related-to" jurisdiction.**

While section 1334 does not expressly limit the bankruptcy court's jurisdiction following plan confirmation, it is widely recognized that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks."  *In re General Media, Inc.*, 335 B.R. 66, 73 (S.D.N.Y. 2005); *see also In re Park Avenue Radiologists, P.C.*, 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011); *Cantor v. Am. Banknote Corp.*, 2007 WL 3084966 at *3 (S.D.N.Y. Oct. 22, 2007); *Guccione v. Bell*, 2006 WL 2032641 at *4 (S.D.N.Y. July 20, 2006) ("Courts generally agree that federal jurisdiction shrinks once plan confirmation has occurred"). A party invoking a bankruptcy court's post-confirmation jurisdiction must satisfy two requirements.  First, the matter must have a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *General Media,* 335 B.R. at 73 (internal citations omitted).  Second, the plan must provide for the retention of jurisdiction over the dispute.  *Id.*

Disputes that have a sufficiently "close nexus" to the plan or proceeding to uphold bankruptcy court jurisdiction post-confirmation typically involve situations in which the bankruptcy court is required to construe and enforce provisions of a plan or plan-created trust agreement itself. *See, e.g., In re Resorts Int'l, Inc.,* 199 B.R. 113 (Bankr. D. N.J. 1996) (post-confirmation related-to jurisdiction exists when it is necessary to interpret provisions of Plan to determine whether the Liquidation Trust or the debtor was entitled to accrued interest); *In re A.H. Robbins Co.*, 86 F.3d 364 (4th Cir. 1996) (to resolve dispute, it was necessary to interpret the plan's accompanying documents to determine whether it was unreasonable to charge standard attorney's fees out of the pro rata distribution).

In contrast, when resolution of a dispute requires more than merely interpreting the terms of a plan, it lacks the kind of "close nexus" to the plan or proceeding to support post-confirmation bankruptcy jurisdiction. In one case relied on by the court in *General Media*, the Third Circuit found that the bankruptcy court lacked jurisdiction in a matter where the litigation trust established by the debtor's confirmed chapter 11 plan brought an adversary proceeding alleging malpractice against an accounting firm:

> Resolution of this matter will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement. Whether Price Waterhouse was negligent or breached its contract will not be determined by reference to those documents. There is no dispute over their intent. The Trustee's claims are "ordinary" professional negligence and breach of contract claims that arise under state common law. Though the Plan and Trust Agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction.

*In re Resorts Int'l*, 372 F.3d at 170. Similarly, *Falise v. American Tobacco Co.,* 241 B.R. 48 (E.D.N.Y. 1999), involved a dispute between tobacco manufacturers and a trust created as a result of the bankruptcy of an asbestos products producer. *Id.* at 51. The trust sought to recover from the tobacco companies for their role in contributing to asbestos-related illnesses. *Id.* The court held that bankruptcy court jurisdiction does not extend to a "major suit" brought by the

trust against non-parties to the bankruptcy or to any closely related proceeding, noting that resolution of this dispute would require more than mere construction of the plan terms. *Id.* at 52, 55. Where resolution of the dispute would have no impact on any integral aspect of the bankruptcy plan or proceeding, bankruptcy jurisdiction did not exist.[7]

**b.   The mere fact that a post-confirmation lawsuit may result in a monetary recovery for creditors is not sufficient to create bankruptcy jurisdiction.**

Plaintiff has asserted state law breach of contract and indemnity claims against PCA, a non-debtor, non-creditor party that did not file a claim against the bankruptcy estate, relating to the pre-bankruptcy sale of mortgages by PCA to RFC. While Plaintiff baldly asserts that core bankruptcy jurisdiction exists over these exclusively state law claims, the reality is that these claims bear no relation to RFC's bankruptcy case, to the confirmed Plan, or to bankruptcy law at all. While Plaintiff, if successful, may generate a recovery for the Trust beneficiaries, the fact that a post-confirmation suit may yield additional recovery for creditors is not enough to create post-confirmation "related-to" jurisdiction. As recognized by the court in *General Media*, a "bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase recovery to creditors, because the rationale could 'endlessly stretch a bankruptcy court's jurisdiction.'" *Id.* at 75 (citing *Montana v. Goldin* (In re *Pegasus Gold Corp.)*, 394 F.3d at 1194 n.1 (9th Cir. 2005)). While the resolution of this dispute may potentially affect the former creditors as trust beneficiaries, "they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims."

---

[7] *See also In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993) (holding that bankruptcy jurisdiction did not exist in breach of fiduciary duty action by liquidating trustee against debtor's partner where "the only nexus to this bankruptcy case is that the plaintiff . . . is a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization" and "[n]owhere in the lawsuit is the bankruptcy court being asked to construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with in the face of violations").

*In re Resorts Int'l,* 372 F.3d at 169-170 ("if the mere possibility of a gain or loss of trust assets suffced to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy jurisdiction beyond what Congress intended for non-Article III bankruptcy courts").

**c.    The fact that the Plan provides for retention of the bankruptcy court's jurisdiction is not sufficient to confer bankruptcy jurisdiction over this lawsuit.**

Under the *General Media* test for post-confirmation bankruptcy jurisdiction, not only must the matter have a "close nexus" to the plan or proceedings, but the confirmed plan must provide for retention of jurisdiction over the dispute. *General Media,* 335 B.R. at 73. As shown above, this dispute lacks the kind of close nexus to the bankruptcy plan or proceedings that would support bankruptcy jurisdiction. In addition, although the Plan in this case included a generic retention of jurisdiction, the Liquidation Trust Agreement expressly provides that "[n]otwithstanding the foregoing or any other provision of this Plan, the Liquidating Trust Board shall have the power and authority to bring (or cause to be brought) any action ***in any court of competent jurisdiction*** to prosecute any Liquidating Trust Causes of Action." (Sullivan Decl., Exh. E, p. 60) (emphasis added). Thus, any suggestion that this action must be prosecuted in the Bankruptcy Court is undermined by the very document that created the Liquidating Trust.

Moreover, while the retention of jurisdiction in a plan is a predicate to post-confirmation jurisdiction, it is not enough to confer power on the Bankruptcy Court to hear this dispute. A retention of jurisdiction provision will be given effect only if there is bankruptcy court jurisdiction to begin with, and "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *In re Resorts Int'l,* 372 F.3d at 161. Therefore, where, as here, a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. *Id.; see also* 8 Collier on Bankruptcy ¶ 1142.04[1] at 1142-8 (A.

10

Resnick & H. Sommer, eds. 16th ed. 2014) ("neither section 142 nor the terms of a plan confer jurisdiction upon a bankruptcy court . . . When a bankruptcy court is asked to consider a plan-related matter after confirmation, the court must, as a threshold matter, determine whether it has jurisdiction under 28 U.S.C. § 1334").

**d.    <u>The Bankruptcy Court lacks jurisdiction to hear this action.</u>**

Given the lack of jurisdiction for the Bankruptcy Court to entertain this matter under 28 U.S.C. § 1334, there is no basis for it even to hear and report proposed findings of fact and conclusions of law to the District Court for *de novo* review.   Although the Supreme Court recently determined in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014), that bankruptcy courts may hear and report to the district court on so-called "*Stern* claims"—"claims designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter," 134 S. Ct. at 2170—the bankruptcy court's ability to hear the matter in the first instance depends on the existence of valid federal bankruptcy jurisdiction.   "With the core category no longer available for the *Stern* claim at issue, we look to §157(c) to determine whether the claim may be adjudicated as a non-core claim – specifically, *whether it is 'not a core proceeding' but is 'otherwise related to a case under title 11.'" Id.* at 2173 (emphasis added).   Absent such jurisdiction, as here, there is no basis for the Bankruptcy Court even to hear and report proposed findings and conclusions to the District Court:

> If the claims are not 'related to' the bankruptcy case, then even consent might not permit the bankruptcy court to hear the matter.   Thus, if section 157(c) does not apply, the issuance of proposed findings of fact and conclusions of law may exceed the scope of the reference under section 157(a).

*New York Skyline, Inc. v. Empire State Bldg. Trust Co. L.L.C. (In re New York Skyline, Inc.)*, No. 13-Civ-7686, 2014 U.S. Dist. LEXIS 82477 (S.D.N.Y. June 16, 2014) (bankruptcy appeal

remanded for, among other things, determination whether matter was within bankruptcy court's jurisdiction). Thus, the reference should be withdrawn so that the District Court may exercise whatever jurisdiction it may have to determine the action under other bases of federal subject matter jurisdiction and to transfer it to the District of Minnesota.[8]

## 2. The Reference Should Be Withdrawn "For Cause."

Even if the Bankruptcy Court had jurisdiction to hear this case (which it does not), the reference nevertheless should be withdrawn pursuant to 28 U.S.C. § 157(d), which provides, in relevant part:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C. § 157(d).

Although section 157(d) does not define "cause," the Second Circuit has established a widely-adopted two-prong test: "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). Second, the court must "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Id.; Solutia Inc. v. FMC Corp.*, 2004 WL 1661115, at *2 (S.D.N.Y. July 27, 20014).

Following the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), district courts determining whether to withdraw the reference have focused less on the core/non-core analysis and more on whether the bankruptcy court has adjudicatory authority to render a

---

[8]  PCA reserves its defense that any court in New York lacks personal jurisdiction over it for the claims at issue.

final judgment.  *See Synegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (Karas, J.); *see also In re Erickson*, 2012 WL 1999493 (D. Md. June 1, 2012); *In re Appalachian Fuels, LLC*, 472 B.R. 731 (E.D. Ky. 2012).  Thus, after *Stern*, "where the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal."  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457,467 (S.D.N.Y. 2011). (McMahon, J.).  Here, all of the relevant factors weigh strongly in favor of withdrawing the reference.

### a.    <u>This action is a non-core proceeding.</u>

Despite Plaintiff's assertion in the Complaint that this action is core, this matter is a non-core proceeding.  Core proceedings are those that "arise under title 11" or "arise in cases under title 11."  *Stern,* 131 S.Ct. at 2604-05.  Cases "arise under" title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code."  Cases "arise in" a title 11 proceeding if they are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy."  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011)(internal citations omitted).

In the case at bar, Plaintiff asserts two purely state law claims for breach of contract and indemnification arising out of the pre-petition contract for the sale of mortgages from PCA to RFC.  The underlying substantive rights at issue were created by state law, not the Bankruptcy Code, and consequently, the claims do not "arise under" title 11.  Indeed, by filing numerous actions in non-bankruptcy courts, state or federal, Plaintiff has conceded that this case <u>does</u> <u>not</u> depend upon federal law, let alone bankruptcy law, for its existence "could easily proceed in a court that lacks federal bankruptcy jurisdiction" — the hallmarks of a non-core proceeding. *In re Joseph DelGreco & Co.*, 2011 WL 350281, at *2 (S.D.N.Y. Jan. 26, 2011).

b.    **The Bankruptcy Court lacks final adjudicatory authority.**

There is no jurisdictional basis for the Bankruptcy Court to hear this action in any capacity.   Even if, *arguendo*, this action could somehow be classified as a "core" bankruptcy proceeding (which it cannot), the Bankruptcy Court nevertheless has no authority to issue binding, final orders.   Plaintiff asserts in the Complaint that this adversary proceeding is a "core" proceeding under 28 U.S.C. § 157(b)(2)(O), the so-called "catch all" provision, which states in relevant part that core proceedings include "other proceedings affecting the liquidation of the assets of the estate." But under the Supreme Court decision in *Northern Pipeline*, bankruptcy courts cannot exercise Article III judicial power with respect to purely state law claims that involve private rights unrelated to the bankruptcy process, even if the state law claims could lead to a judgment that would increase assets of the estate.   *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71-73, 102 S. Ct. 2858, 71, 73 L.Ed.2d 598 (1982).  Courts have recognized that *Marathon* prohibits bankruptcy courts from entering final judgments on exclusively state law claims that happen to fall within the technical definition of § 157(b)(2)(O):

> Again, pursuant to the Supreme Court's *Marathon* decision, § 157(b)(2)(O) cannot be broadened to include Plaintiffs' state law claims.  Virtually any state-law causes of action could affect estate assets and the adjustment of debtor-creditor relations, including the state-law causes of action implicated in *Marathon*.  Under *Marathon*, § 157(b)(2)(O) issues must be limited to claims that arise in a case under title 11 or arise in a case under title 11 in addition to having an affect on estate assets and debtor-creditor relations.

*In re Morrison,* 409 B.R. 384, 391 (S.D. Tex. 2009).

More recently, the Supreme Court held in *Stern v. Marshall* that even where a proceeding is considered "core" within the meaning of §157(b), the Bankruptcy Court may nevertheless lack constitutional authority to adjudicate it.  *Stern*, 131 S. Ct. at 2604, 2608.  If the Bankruptcy Court lacks constitutional adjudicatory power, there will be no advantage to allowing the matter to be

14

heard in Bankruptcy Court, because [the district court] will eventually need to review the Article I Court's determinations *de novo*." *Development Specialists*, 462 B.R. at 467. While the parameters of *Stern* have yet to be fully drawn by lower courts, courts analyzing § 157(b)(2)(O) in the aftermath of *Stern* consistently hold that "claims brought to augment the estate based on pre-petition actions and which are not intimately tied to the bankruptcy proceeding exceed the constitutional authority of the bankruptcy court." *In re Solomon's One, LLC*, 2014 WL 846084 at *2 (Bankr. D. Md. Mar. 4, 2014); *see also In re Meyers*, 2013 WL 6080270 (Bankr. N.D. Ohio Nov. 18, 2013) ("state law actions, which happen to fall within the broad wording of a catch-all provision, are more accurately described as noncore related proceedings. Therefore, even if an action falls within the literal wording of § 157(b)(2)(O), such an action must still "arise in" or "arise under" the bankruptcy code before it is a core proceeding."); *In re Cavalry Construction*, 2013 WL 5682741 (Bankr. S.D.N.Y. Oct. 18, 2013) (parties waived right to object to bankruptcy court's power to enter a final judgment on the merits after being advised by both district court and bankruptcy court of the potential applicability of *Stern v. Marshall* to the § 157(b)(2)(O) claim.).

Plaintiff alleges this is a core proceeding under § 157(b)(2)(O). Plaintiff's claims may fall within the broad wording of § 157(b)(2)(O), and they may potentially result in a recovery for creditors. But as purely state law claims that do not "arise under" title 11 or "arise in" title 11, the Bankruptcy Court lacks the constitutional authority to adjudicate them or issue a final ruling.

c.   **PCA does not consent to final adjudication by the Bankruptcy Court.**

Under § 157(c)(2), a bankruptcy court may enter final orders and judgments with respect to non-core proceedings if the parties consent. PCA does not consent to final adjudication of this matter by the Bankruptcy Court. PCA is not a creditor of RFC; it did not file a claim in RFC's

Bankruptcy Proceedings; and it has in no way submitted itself to the jurisdiction of the Bankruptcy Court. Moreover, PCA reserves its right to a trial by jury in this lawsuit, which can only occur outside of the Bankruptcy Court. *See Granfinanciera S.A. v. Nordberg*, 492 U.S. 33 (1989) (non-debtor defendant that had not filed a claim in debtor's bankruptcy case retains right to trial by jury).

**d.**      <u>The remaining *Orion* factors strongly favor withdrawal.</u>

The remaining factors articulated in *Orion*— which include (1) questions of efficient use of judicial resources, (2) delay and costs to the parties, (3) uniformity of bankruptcy administration and (4) the prevention of forum shopping — all heavily favor withdrawal of the reference in this case. As noted above, "where the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal." *Development Specialists*, 462 B.R. at 467; *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 205 (E.D.N.Y. 2013) ("In light of the Court's findings that this is a non-core matter, the Court finds that the remaining *Orion* factors weigh in favor of withdrawing the reference").

**i.**      <u>Because the Bankruptcy Court lacks final adjudicative authority, proceeding with this matter in the Bankruptcy Court will waste valuable judicial and party resources.</u>

Because this a non-core proceeding over which the Bankruptcy Court lacks final adjudicative authority, the Bankruptcy Court may only make proposed findings of fact or law that are subject to *de novo* review by the District Court for final adjudication. *In re Park Ave. Radiologists, P.C.*, 450 B.R. at 468-69. Thus, any decision by the Bankruptcy Court would result in an appeal to the District Court, which would then take up the matter *de novo*. Two of the busiest courts in the country would thus be charged with undertaking a complete and detailed review of the same matter, a significant waste of judicial resources that would result in

16

duplicative briefing and cause both parties to incur needless expenses and delay. *See In re Worldcom, Inc.*, 2008 WL 2441062, at *3 (S.D.N.Y. June 18, 2008) (Chin, J.) ("[A]s a bankruptcy court's ruling on a non-core matter is subject to *de novo* review, a district court may conclude that its adjudication of the matter in the first instance would be more efficient"); *Solutia*, 2004 WL 1661115, at *3 ("judicial economy favors withdrawal of the reference" involving common law non-core claims).

Moreover, the Bankruptcy Court would also be unnecessarily burdened by having to make recommendations in this state law action with no real ties to the Bankruptcy Proceedings. *See In re Durso Supermarkets, Inc.*, 170 B.R. 211, 214 (S.D.N.Y. 1994) ("Because the Action is non-core, determinations made by the bankruptcy court would be subject to *de novo* review by this court. Thus, unnecessary costs could be avoided by a single proceeding in the district court"). Such "duplication of effort" should be avoided here and it is most efficient to litigate this fact-intensive case in a single forum, which is authorized to enter final orders.

  ii. **Withdrawing the reference now would not impose undue costs or delay on the parties.**

This litigation is still in its very early stages and there has been little activity of any kind so far. PCA has not yet responded to the Complaint and a case management order has not yet been entered. The Bankruptcy Court has not yet expended significant effort on the case. Therefore, withdrawing the reference now would not impose undue costs or delay on the parties. *See LightSquared Inc. v. Deere & Co.*, 2014 WL 345270, at *6 (S.D.N.Y. Jan. 31, 2014) (Berman, J.) (withdrawal warranted where, "because the Adversary Proceeding is still in its relatively early stages, . . . withdrawal will not impose undue cost or delay on the parties").

  iii. **Keeping these state law claims in the Bankruptcy Court would not "promote the uniformity of bankruptcy administration."**

17

Because this case involves exclusively state common law causes of action which do not raise any substantive issues of bankruptcy law, keeping it in Bankruptcy Court would not "promote the uniformity of bankruptcy administration." *See In re Joseph DelGreco & Co.*, 2011 WL 350281, at *5; *see also M. Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*, 2008 WL 2596322, at *4 (S.D.N.Y. June 26, 2008) (McMahon, J.) (withdrawing the reference "would not hamper uniform administration of the bankruptcy code" where "[t]he Complaint and counterclaim concern a contract dispute under New York law"); *In re Ionosphere Clubs, Inc.*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24 1990) (Mukasey, J.) ("The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of statutes outside the Bankruptcy Code").  Indeed, the fact that Plaintiff has filed numerous similar state common law actions in New York and Minnesota state and federal courts is proof that this action does not arise out of or depend upon bankruptcy law in any way.

### iv.    Permitting Plaintiff to proceed in the Bankruptcy Court would encourage and reward forum shopping.

Prior to suing PCA in this action, Plaintiff filed more than 60 lawsuits against various "correspondent lenders" similar to PCA, mostly in Minnesota state and federal court.[9]   Each of the complaints filed in these cases in Minnesota assert state common law claims for breach of contract and indemnification arising out of the respective defendants' alleged sale of mortgage loans to RFC.  Although Plaintiff's Minnesota lawsuits were filed in courts other than the Bankruptcy Court, Plaintiff evidently had a change of heart on its selection of forum and filed motions to move many of those cases to the Bankruptcy Court in New York.  In addition, Plaintiff stopped filing cases in Minnesota and started filing in the Bankruptcy Court, including this case.  Plaintiff's actions smack of forum shopping and should not be rewarded.  *See In re*

---

[9] PCA believes that there are 67 such lawsuits now pending in the District of Minnesota.

*Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y. 1995) ("[T]he concern about forum shopping alone, almost compels the Court to keep the case [out of the bankruptcy court]").  For the foregoing reasons, PCA respectfully requests this Court withdraw the reference of the action.

### B.   THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF MINNESOTA

A district court considering a motion to transfer in cases not involving forum-selection clauses must decide "whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice."  *Atlantic Marine Constr. Co., Inc. v. U.S. District Ct. for Western Dist. of Tex.*, 134 S. Ct., 568, 581 (2013) (internal quotation marks omitted).  The decision to transfer venue is within the discretion of the court based on "an individualized, case-by-case consideration of convenience and fairness."  *Gulf States Exploration Co. v. Manville Forest Prod. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).  However, where, as here, the parties' contract contains a forum-selection clause, "[t]he calculus changes" and the forum-selection clause should be "given controlling weight in all but the most exceptional circumstances."  *Atlantic Marine*, 134 S. Ct. at 581.  That is because "the enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Id.*  (internal quotation  marks omitted).

RFC's contracts with PCA contain clear, strongly-worded forum-selection clauses mandating that any litigation involving those contracts must occur in Minnesota.  By subscribing to the forum selection clause, RFC "irrevocably" agreed that such claims would be adjudicated in Minnesota and "waive[d]" any improper venue challenges.  The Plaintiff here has asserted ordinary state law breach of contract claims and there are no "exceptional" circumstances exist in this case that would warrant avoiding the bargained-for forum-selection clause.  Therefore, the

forum-selection clause should be enforced and this action should be transferred to the District of Minnesota.

1.   **<u>Forum Selection Clauses in the Parties' Agreements Require This Action to be Transferred to the District of Minnesota.</u>**

As discussed above, the contracts attached to the Complaint contain nondiscretionary forum selection clauses requiring all claims to be brought in Minnesota:

> Each of the parties <u>irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota,</u> over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or serving relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. <u>Each of the parties irrevocably waives the defense of an inconvenient forum</u> to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law. <u>Each of the parties further agrees not to institute any legal actions or proceedings against the other party</u> or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract <u>in any court other than as hereinabove specified in this paragraph.</u>

(Compl., Ex. A at 3 (emphasis added); *see also id.* at 6 (same).)

Courts presume the validity of such forum selection clauses and will enforce these provisions in the absence of extraordinary circumstances. "'[F]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances,' . . . or unless the forum selection clause 'was invalid for such reasons as fraud or overreaching.'" *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (citations omitted). Thus, "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 134 S. Ct. at 581 (internal quotations omitted). Indeed, a party may only avoid enforcement of a forum selection clause by showing that proceeding "'in the contractual forum will be so gravely

20

difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Martinez v. Bloomberg LP*, 740 F.3d 211,218 (2d Cir. 2014) (internal quotations omitted).

There is nothing "exceptional" that warrants disregarding the forum selection clause in this case.  Plaintiff cannot credibly argue that litigating its claims in the District of Minnesota would be "gravely difficult and inconvenient" such that it will be deprived of its day in court.  First, RFC explicitly "waive[d] the defense of an inconvenient forum" in its contracts with PCA (*see* Sullivan Decl., Exh. A, Compl., Exh. A thereto, ¶ 9).  Further, Plaintiff itself filed numerous substantially similar actions in Minnesota state and federal court, demonstrating that litigating its claims against PCA in Minnesota would not be burdensome or inconvenient.  Moreover, RFC's counsel has admitted that most of the RFC's former employees reside in Minnesota and Pennsylvania, not New York (*see* Sullivan Decl., Exh. F ¶ 43).  There are at least 67 cases pending in the District of Minnesota that will remain in Minnesota.  This demonstrates that litigating its claims against PCA in Minnesota would not be burdensome of inconvenient to the Trust.

Similarly, Plaintiff cannot argue that the forum selection clause in RFC's contracts with PCA was the product of fraud or overreaching because, as it acknowledged in its motion to transfer briefing in the Minnesota actions, RFC inserted this provision in the contracts for its own benefit.[10]  Indeed, RFC has relied on substantially similar forum-selection clauses in other loan repurchase cases in opposing transfers out of the District of Minnesota.  *See GMAC/Residential Funding Corp. v. Infinity Mortgage, Inc.*, 2003 WL 21406189, at *2-3 (D. Minn. June 13,

---

[10] *See, e.g., Residential Funding Co., LLC v. PNC Bank*, Civil Action No. 13 Civ. 3498 (JRT) (D. Minn.), ECF No. 20 at 23 ('It was *RFC*, not [the] Mortgage Originators, that had a presence in Minnesota and an interest in avoiding the inconvenience of travel.").

2003).[11]   In *Infinity* the court refused to let the defendant "evade [the forum selection clause] based on [...] claims of convenience and interest of justice" where "[t]o hold otherwise promotes uncertainty in business relationships, because it implies that a contract containing language as plain as the language in this contract can be overlooked when it is convenient to do so."  *Id.* (internal quotations omitted).   This Court should apply the same reasoning in enforcing the forum-selection clause against Plaintiff.

> ### 2.      RFC Has Waived the Right To Argue That the Bankruptcy Court is More Convenient Than the District of Minnesota.

In its contracts with PCA, RFC expressly "waive[d] the defense of an inconvenient forum."  (Compl., Ex. A thereto, ¶ 9).  Having "irrevocably submit[ted] to the jurisdiction of" Minnesota federal or state court and explicitly waiving any argument that such a forum is inconvenient, Plaintiff cannot now argue otherwise.  It is well established that "[w]hen parties agree to a forum selection clause, they ***waive the right to challenge the preselected forum as inconvenient*** or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  *Atlantic Marine,* 134 S. Ct. at 582 (district court erred in giving weight to convenience factors in transfer analysis under Section 1404) (emphasis added).

> ### 3.      The Relevant Factors Favor Transfer.

As discussed above, under the Supreme Court's ruling in *Atlantic Marine*, where a valid forum selection clause exists, the court's "calculus changes" and it may not consider the "convenience of the parties and various public-interest considerations."  *Atlantic Marine*, 134 S. Ct. at 581.  But even if the Court were to weigh these factors, they also would support transfer.

---

[11] *See also Residential Funding Corp. v. Anvil Funding Corp.*, No. Civ. 04-3043 (JNE), 2005 WL 1323940, at *7-8 (D. Minn. June 3, 2005) (refusing to transfer RFC's loan repurchase case to other district based, in part, on forum selection clause).

In decided whether to transfer venue, courts in the Second Circuit examine the following factors:  "(a) the plaintiff's choice of forum, (b) the convenience of witnesses, (c) the location of relevant documents and relative ease of access to sources of proof, (d) the convenience of the parties, (e) the locus of operative facts, (f) the availability of process to compel the attendance of unwilling witnesses, (g) the relative means of the parties, (h) the forum's familiarity with the governing law, and (i) trial efficiency and the interest of justice, based on the totality of the circumstances."  *Liberty Mut. Ins. Co. v. Fairbanks Co.*, No. 13 Civ. 3755 (JGK), 2014 WL 1796005, at *7 (S.D.N.Y. May 5, 2014).  All of the foregoing factors support the transfer of this action to the District of Minnesota.

### a.     Plaintiff's choice of forum.

In *Atlantic Marine*, the Supreme Court stressed that in cases where there is a valid forum-selection clause, "the plaintiff's choice of forum merits no weight."  *Atlantic Marine*, 134 S. Ct. at 581.  Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id*.  Thus, Plaintiff's attempt to circumvent the mandatory forum-selection clause by filing its adversary proceeding in the Bankruptcy Court shall be given no weight.

### b.     Location of witnesses and parties, location of documents, locus of operative facts, and availability of process.

These factors, too, weigh in favor of transfer to the District of Minnesota.  The Complaint acknowledges that RFC has its principal place of business in Minneapolis, Minnesota.  (Compl. ¶ 13) and upon information and belief, the Plaintiff only has offices in Minnesota and Pennsylvania.  Moreover, RFC's counsel has admitted that most of the company's former employees are based in Minnesota or Pennsylvania, *not New York*, (most of the former employees live in "Minnesota and Pennsylvania"), and therefore would be "beyond the reach of

a trial subpoena" if the case is tried in New York.  (Sullivan Decl., Exh. F ¶ 43).  Thus, PCA

would be prejudiced if it were unable to call these former RFC employees at trial.  In contrast,

there are no obstacles to Plaintiff receiving a fair trial in Minnesota, as it is Plaintiff in 67 cases

pending in Minnesota state and federal court, that will remain in Minnesota.

Additionally, while PCA currently lacks information regarding the location of documents

relevant to Plaintiff's claims, it is likely that the paper files relating to the loans at issue were

stored in Minnesota, where RFC was located.   Further, the contracts at issue likely were

negotiated between RFC and PCA employees in Minnesota and Georgia, so the locus of

operative facts favors venue in the District of Minnesota.

### c.   Forum's familiarity with governing law, trial efficiency, and the interests of justice.

Because Minnesota law applies to Plaintiff's claims (*see* Compl., Ex. A, ¶10), the

advantage of having a Minnesota court determine questions of local law likewise weighs in favor

of transfer.  The District of Minnesota is better positioned than the Bankruptcy Court to apply

Minnesota law to RFC's contracts with PCA and evaluate the various representations and

warranties contained therein.   While the Bankruptcy Court may be capable of interpreting

Minnesota contract law, it certainly would be advantageous for these parties, as well as others

conducting business in Minnesota, if Minnesota courts decide the important questions presented

here involving alleged breaches of contracts executed in Minnesota.   Moreover, even if the

Bankruptcy Court gained a general appreciation of RFC's practices related to purchasing loans

from lenders, the Bankruptcy Court, as well as the District of Minnesota, would need to take a

fresh look at the relevant contracts and representations and warranties in analyzing Plaintiff's

claims that PCA breached these provisions under Minnesota Law.   Additionally, as explained

above, the Bankruptcy Court may not enter final judgments on the Plaintiff's claims as they are

non-core claims.  Thus, a transfer of this action to the District of Minnesota will promote trial efficiency.

Finally, because of the presence of the forum-selection clause, the interests of justice strongly favor transfer to the District of Minnesota.  *See Atlantic Marine*, 134 S. Ct. at 581 (enforcement of forum-selection clauses "promote[s] the interest of justice" because it "protects [parties'] legitimate expectations and furthers vital interests of the justice system").  Based on the foregoing, both the interest of justice and the convenience of all the parties and witnesses clearly and strongly favor transfer of the adversary proceeding to the District of Minnesota.

## IV.  CONCLUSION

For the foregoing reasons, PCA respectfully requests that this Court withdraw the reference in this adversary proceeding and that the venue be transferred to the United States District Court for the District of Minnesota.

Dated: New York, New York
      July 11, 2014

**PRYOR CASHMAN LLP**

By:  _/s/ Richard Levy, Jr._
      Richard Levy, Jr.
7 Time Square
New York, New York 10036
Telephone:  (212) 326-0886
Facsimile:   (212) 326-0806
rlevy@pryorcashman.com

**BURR & FORMAN LLP**

By:  _/s/ John O'Shea Sullivan_
      John O'Shea Sullivan (*pro hac vice*)
171 Seventeenth Street, N.W., Suite 1100
Atlanta, Georgia 30363
Telephone:  (404) 815-3000
Facsimile:   (404) 817-3244
ssulivan@burr.com

*Attorneys for Defendant Primary Capital Advisors, LC n/k/a Primary Capital Mortgage, LLC*